IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HENSON GAINES,                         :
    Plaintiff                      :       CIVIL ACTION
                                   :
v.                                     :
                                   :
MICHAEL J. ASTRUE,                     :       No. 10-5098
Commissioner of the                    :
Social Security Administration,        :
    Defendant                      :

**FILED**
SEP - 7 2011
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                        September 7, 2011
U.S. MAGISTRATE JUDGE

      Henson Gaines seeks judicial review of the Administrative Law Judge's ("ALJ") decision

denying his applications for Social Security Disability Insurance ("DIB") and Supplemental

Security Income ("SSI") from March 31, 2007 through November 1, 2007 ("the contested

period"). Gaines was awarded DIB and SSI after November 1, 2007 based on his mental

impairments and abstention from drug and alcohol abuse. Gaines alleges the ALJ's decision to

withhold DIB and SSI during the contested period was not supported by substantial evidence

because the ALJ: (1) failed to follow the proper procedure[1] for determining whether Gaines'

---

    [1]The Social Security Administration has adopted a procedure for determining whether a
claimant's alcohol or substance abuse is a contributing factor material to the determination of his
disability. 20 C.F.R. §§ 404.1535, 416.935. The process is assessed during Step Three of the
five-part test for determining the claimant's disability, see infra note 3, and is summarized as
follows:

      Step One: If the claimant's drug addiction or alcoholism is a contributing factor material
to the determination of his disability, the Commissioner or ALJ asks whether the claimant would
still be disabled despite the known substance abuse. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

      Step Two: In making this determination, the Commissioner or ALJ evaluates which of the
claimant's current physical and mental limitations, upon which the disability determination is
based, would remain if the claimant stopped using drugs or alcohol and then determines whether

substance abuse[2] was a contributing factor material to his disability determination; and (2)

improperly relied upon, and misinterpreted, medical expert Dr. Richard Cohen's opinion to

conclude Gaines' mental impairments did not justify a finding of disability, absent substance

abuse, at step three of the sequential analysis applicable to claims for DIB and SSI.[3]  See

---

any or all of the claimant's remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

Step Two, Subpart i: If the Commissioner or ALJ determines the claimant's remaining limitations would not be disabling, then the drug addiction or alcoholism is a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

Step Two, Subpart ii: If the Commissioner or ALJ determines the claimant's remaining limitations are disabling, the claimant is disabled independent of his drug addiction or alcoholism.  In this case, the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability.  20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

[2]Physicians recognize substance abuse as a mental disorder.  Alcoholism is "a pattern of pathological alcohol use or impairment in social or occupational functioning due to alcohol, and either tolerance or withdrawal." Diagnostic and Statistical Manual of Mental Disorders, IV-TR 169 (4th ed. Am. Psychiatric Assoc. 2000) [hereinafter DSM IV-TR].  For the purposes of Social Security Disability determination, alcoholism is defined as "persistent, uncontrolled use of alcoholic beverages." See Ray v. Bowen, 843 F.2d 998, 1000 (7th Cir. 1988) (when evaluating alcoholism as a disability, the ALJ must determine whether the claimant's alcoholism affects his or her ability to engage in substantial gainful employment).

There are five principles to consider when evaluating claims based upon alcoholism: "(1) alcoholism is defined by the inability to control the use of alcohol; (2) alcoholism, by itself, can constitute a disability for purposes of SSI and SSDI programs; (3) the Secretary must recognize that end-organ damage is not the only way to prove disability due to alcoholism; (4) the fact that a claimant suffers from alcoholism is not the end of the inquiry for purposes of awarding SSI or SSDI benefits; and (5) instead, the claimant's alcoholism must be severe enough to prevent him from engaging in substantial gainful employment." Johnson v. Sullivan, 749 F. Supp. 664, 669 (E.D. Pa. 1990).

[3]The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified at 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.  The steps of the analysis are summarized as follows:

Step One: If the claimant is working, and if the work is substantially gainful activity, the claimant is not disabled.  If the claimant is not working or is not engaging in substantial gainful activity, the analysis proceeds to Step Two.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Plaintiff's Brief in Support of His Request for Judicial Review at 3-14, <u>Gaines v. Astrue</u>, No. 10-5098 (E.D. Pa. Sept. 30, 2010) [hereinafter Plaintiff's Brief]; Plaintiff's Reply Brief, <u>Gaines v. Astrue</u>, No. 10-5098 (E.D. Pa. May 24, 2011) [hereinafter Plaintiff's Reply].

After careful review, I find the ALJ's decision was not supported by substantial evidence. The ALJ followed the proper regulatory standard. However, his determination that Gaines' substance abuse was a material factor in his disability determination during the contested period was not supported by substantial evidence. <u>Sklenar v. Barnhart</u>, 195 F. Supp. 2d 696, 700-01 (W.D. Pa. 2002).

Accordingly, I respectfully recommend Gaines' request for review be GRANTED.

PROCEDURAL HISTORY

On January 22, 2007, Gaines sought DIB and SSI, alleging disability as of December 31, 2003, R. at 12, which he later amended to March 31, 2007, R. at 12, 37-38, 52. His applications

---

Step Two: If the claimant has no severe impairment and no severe combination of impairments that significantly limit his physical or mental ability to do work, the claimant is not disabled. If there is a severe impairment or severe combination of impairments, the analysis proceeds to Step Three. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Step Three: If the claimant's impairments meet or equal criteria for a listed impairment or impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404, the claimant is disabled. Otherwise, the analysis proceeds to Step Four. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Step Four: If the claimant retains the residual functional capacity to perform his past relevant work, the claimant is not disabled. If the claimant cannot do the kind of work he performed in the past, the analysis proceeds to Step Five. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Step Five: If the claimant's residual functional capacity, age, education, and past work experience, considered in conjunction with the criteria listed in Appendix 2 to Subpart P of 20 C.F.R. Part 404 would permit the claimant to adjust to other work, the claimant is not disabled. Otherwise, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

were denied on August 1, 2007, id., and Gaines timely sought a hearing, R. at 116-17. Gaines

was represented by counsel at his hearing, which began on September 9, 2008, then resumed on

January 9, 2009.[4] R. at 12. The ALJ heard testimony from Gaines, independent medical expert

Dr. Richard Cohen, and vocational expert Dr. Steve Gurman. R. at 52-100. On February 9,

2009, the ALJ sustained Gaines' disability claims after November 1, 2007, but denied his claims

for the prior seven months. R. at 25.

     The ALJ found Gaines was not disabled before November 1, 2007 based on the

following:

     At step one, the ALJ found Gaines had not engaged in substantial gainful

employment since December 23, 2003. R. at 13.

     At step two, the ALJ found Gaines suffered from three severe impairments: major

depression, substance abuse, and osteoarthritis of the knees.[5] R. at 14.

     At step three, the ALJ found Gaines' mental impairments satisfied listings[6] 12.04,

---

    [4]Gaines' attorney was unsure what the alleged onset date was during the hearing. R. at 12, 37-38. After the second hearing, the ALJ held the record open for a week, during which time Gaines amended his alleged onset date to March 31, 2007. R. at 52; see Plaintiff's Brief at 1, n.1.

    [5]Because Gaines does not challenge the ALJ's determination regarding his physical limitations, I will not review the medical history of Gaines' physical impairments. See Plaintiff's Brief; R. at 17.

    [6]The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity. Id.; see 20 C.F.R. §§ 404.1525(a), 416.925(a) (purpose of the listings is to describe impairments "severe enough to prevent a person from doing any gainful activity"). The listing was designed to operate as a

"affective disorders,"[7] and 12.09, "substance abuse disorders."[8]  R. at 14-16.  However, before

moving to step four, the ALJ determined Gaines' substance abuse was a contributing factor

material to his disability determination during the contested period.  R. at 16.  Absent substance

abuse, however, Gaines did not meet listing 12.04 and was not disabled for the purposes of DIB

or SSI during the contested period.  R. at 17-19.  The ALJ also assessed Gaines' Residual

---

presumption of disability making further inquiry unnecessary.  <u>Sullivan</u>, 493 U.S. at 532.

[7]Listing 12.04 requires the claimant to show "disturbance of mood, accompanied by a full or partial manic or depressive syndrome," with:

> A. Medically documented persistence, either continuous or intermittent, of one of the listed symptoms including, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. AND

> B. Resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration. OR

> C. Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R., pt. 404, subpt. P, App'x 1, § 12.04.

[8]The criteria for listing 12.09 are "behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." 20 C.F.R., pt. 404, subpt. P, App'x 1, § 12.09.  A claimant meets the criteria if his behavioral changes are corroborated by any of the following symptoms: (1) organic mental disorders; (2) depressive syndrome; (3) anxiety disorders; (4) personality disorders; (5) neuropathies; (6) liver damage; (7) gastritis; (8) pancreatitis; or (9) seizures.  <u>Id.</u>

Function Capacity ("RFC")[9], and found Gaines was limited to light work[10] with low stress and low contacts during the contested period. R. at 22.

At step four, the ALJ concluded Gaines could not engage in past relevant work. Id. At step five, the ALJ found there were occupations with "significant numbers" of jobs in the regional and national economy that Gaines could have performed during the contested period, even if Gaines were further limited to sedentary work activities. R. at 22-23. The ALJ concluded Gaines was not disabled during the contested period. R. at 23.

Gaines sought review from the Appeals Council, which was denied on July 27, 2010. R. at 1-5.

## FACTUAL HISTORY

Gaines was 48 years old at the time of the ALJ's decision.[11] R. at 59. He completed high school and is able to communicate in English. R. at 60. Gaines last had substantial gainful employment in December of 2003. R. at 13. Gaines told medical and social work personnel he

---

[9]Gaines' RFC reflects "the most [he] can still do [in a work setting] despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

[10]Light-level work is defined as work which requires maximum lifting of twenty pounds, with frequent lifting and carrying of ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Light work also "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." Id. The ALJ placed additional restrictions on the type of "light work" Gaines can do, which "preclud[ed] kneeling, crouching and crawling." R. at 22.

[11]During the contested period, Gaines was considered a "younger person" under the Commissioner's regulations, which define a younger individual as a person under age 50. See 20 C.F.R. §§ 404.1563(c), 416.963(c). Age is one of the relevant factors in determining whether a claimant can adjust to other work in the national economy. Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment," 20 C.F.R. §§ 404.1563(a), 416.963(a); however, a younger person's age generally does not seriously impact the ability to adjust to other work, 20 C.F.R. §§ 404.1563(c), 416.963(c).

had done odd jobs since then, but currently claims those statements were fabricated to hide the fact he was stealing money to finance his substance abuse. R. at 97-98. Gaines claimed disability due to depression, alcoholism, pain in both knees, and bipolar disorder. R. at 145.

The relevant history concerning Gaines' mental impairments and substance abuse are as follows:

•  From December 11, 2006 through December 22, 2006, Gaines was hospitalized at the Kirkbride Center, a substance abuse treatment facility. R. at 226-32. Gaines' crack and alcohol addiction caused him to enter into a ten-day detox program, where he received psychiatric evaluation. R. at 199-225. He complained of blackouts, suicidal thoughts, auditory hallucinations, depression, and substance abuse. R. at 203, 206. He reported he abused alcohol since he was 25 years old and cocaine since he was 33 years old. R. at 212. Medical personnel determined Gaines suffered from depression and substance abuse, noting he used cocaine and showed symptoms of alcohol addiction. Id. Upon discharge, doctors noted Gaines was still a danger to himself and others, and determined treatment would likely improve his psychiatric condition. R. at 225.

•  From December 23, 2006 through January 3, 2007, Gaines was hospitalized at Temple University Hospital-Episcopal ("Temple Hospital"). R. at 233-85. Gaines complained he suffered from feelings of paranoia, auditory hallucinations, suicidal thoughts, and trouble sleeping. R. at 264-65. Dr. Paul Mandhulatha noted Gaines' diagnoses upon admission were major depressive disorder,[12] recurrent with psychotic features, and alcohol and cocaine

---

[12]"Major Depressive Disorder is characterized by one or more Major Depressive Episodes (i.e. at least 2 weeks of depressed mood or loss of interest accompanied by at least four additional symptoms of depression)." DSM IV-TR at 345.

7

dependence, with a Global Assessment of Functioning ("GAF") score[13] of 20. R. at 248. His

diagnoses upon discharge were major depression, recurrent with psychotic features improved,

and cocaine and alcohol dependence, with a GAF score of 55. Id. Dr. Mandhulatha explained

Gaines was put on a variety of antidepressants, and noted Gaines' condition improved over his

stay. R. at 248-50. He does not mention whether Gaines' improvements were attributed to

abstaining from substance abuse and did not note any improvements in alcohol and cocaine

dependence. Id. Upon discharge, Dr. Cordula Holzer also examined Gaines at Temple Hospital

and diagnosed him with major depression and alcoholism. R. at 288.

•       On January 16, 2007, Gaines visited the Hahnemann Hospital emergency room, R. at

416, where Dr. Leonard Samuels diagnosed Gaines with depression and prescribed Seroquel.[14]

_____

[13]GAF scores (on a 100-point scale) reflect the mental health specialist's assessment on a particular day of the severity of a patient's mental health, and are necessarily based on the patient's state of mind and self-reported symptoms. DSM IV-TR at 34.
        GAF scores in the 11-20 range indicate "some danger of hurting self or others or occasionally fails to maintain minimal personal hygiene or gross impairment in communication." Id.
        GAF scores in the 21-30 range indicate behavior "is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas." Id.
        GAF scores in the 41-50 range indicate serious symptoms, such as suicidal ideation, or any serious impairment in occupational, school, or social functioning, for example, having no friends and inability to keep a job. Id. A GAF score of 50 is on the borderline between serious and moderate symptoms. Dougherty v. Barnhart, No. 05-5383, 2006 WL 2433792, at *3 n.2 (E.D. Pa. Aug. 21, 2006).
        GAF scores of 51 though 60 indicate moderate symptoms such as circumstantial speech and occasional panic attacks or moderate difficulty in social or occupational functioning, for example, few friends or conflict with peers or coworkers. DSM IV-TR at 34.

[14]Seroquel is used to treat nervous, emotional, and mental conditions, including symptoms of bipolar disorder or mania that is part of bipolar disorder. Mayo Clinic, Drugs and Supplements, available at http://www.mayoclinic.com/health/drug-information/DR601493 (last visited Aug. 22, 2011).

R. at 408.

- Gaines visited Hahnemann Hospital again on April 13, 2007 and was diagnosed with depression, alcohol dependence, and substance abuse. Upon admission, Gaines was given a GAF score of 30. R. at 335. Dr. Donald Kushon prescribed four different depression medications. R. at 335-36. Gaines' comprehensive treatment plan stated Gaines suffered from "major depression disorder [with] psychotic features [and] alcohol dependence," and had a GAF score of 30. R at. 356. On April 17, 2007, Gaines' Hahnemann Hospital discharge report stated he suffered from "depression, not otherwise specified and alcohol dependence." R. at 335. Substance-induced mood disorder[15] was ruled out. R. at 347.

- On June 7, 2007, Dr. Ely Sapol, a consultative medical examiner, diagnosed Gaines with recurrent major depressive disorder and substance addiction. R. at 301-05. Dr. Sapol noted Gaines had marked limitations in both his ability to engage socially with the public, co-workers, and supervisors, and his ability to complete routine tasks under pressure. R. at 308. Despite these limitations, Dr. Sapol found Gaines had logical, relevant, and goal-oriented thoughts and could complete his daily living activities independently. Id.

- In a physical assessment dated June 7, 2007, Dr. Arnold Berman noted Gaines' beer drinking habit, but did not expound on the extent of Gaines' substance abuse. R. at 295.

- On July 10, 2007, Gaines was admitted to Hahnemann Hospital with complaints of

---

[15]"The essential feature of Substance-Induced Mood Disorder is a prominent and persistent disturbance in mood . . . that is judged to be due to the direct physiological effects of a substance (i.e., a drug of abuse, a medication, other somatic treatment for depression, or toxin exposure) . . . ." DSM IV-TR at 405. "A substance-induced mood disorder is distinguished from Major Depressive Episode by the fact that a substance (e.g., a drug of abuse, a medication, or a toxin) is judged to be etiologically related to the mood disturbance. . . . Id. at 355.

9

alcohol and drug use. R. at 377-85. He tested positive for cocaine. R. at 387. Doctors assigned

Gaines a GAF score of 60 and diagnosed him with depression and alcohol dependence, but ruled

out substance-induced mood disorder. R. at 385.

•        On July 11, 2007, Dr. Sapol found Gaines used cocaine and alcohol daily with

reported periods of sustained remissions. R. at 304-05. He noted Gaines had consumed alcohol

before attending his consultative examination that day. R. at 308.

•        On July 23, 2007, Dr. Alex Siegel, a psychiatric medical consultant, completed a mental

RFC assessment, in which he described Gaines as either "not significantly limited" or

"moderately limited" for all cognitive tasks. R. at 330-33. Dr. Siegel opined Gaines had suffered

from affective disorders and substance addiction disorders. R. at 317. He also noted Gaines

suffered from major depressive disorder. R. at 320.

•        On December 13, 2007, Gaines visited the MAP Clinic[16] and was diagnosed with

cocaine and alcohol abuse, and recurrent major depression with psychotic features. R. at 419. In

a follow-up visit on August 12, 2008, the examiners noted Gaines suffered from nicotine

dependence and depression with anxiety. R. at 639.

•        On January 9, 2008, Dr. Ralph Kaufman of New Start Clinic examined Gaines and

diagnosed him with bipolar I,[17] personality disorder, and polysubstance dependence. R. at 691-

701.

---

[16]The MAP Clinic is affiliated with Hahnemann Hospital. R. at 419.

[17]Bipolar I disorder is a subclass of bipolar disorder. DSM IV-TR at 382-91. Bipolar, when pertaining to mental disorders, is defined as a "mood disorder[] in which both depressive episodes and manic or hypomanic episodes occur." Dorland's Illustrated Medical Dictionary 223 (31st ed. 2007).

10

- On June 23, 2008, Gaines visited St. Joseph's Hospital, where his primary diagnosis upon admission was alcohol dependence, and his secondary diagnoses included bipolar disorder, post-traumatic stress disorder, and alcohol and nicotine dependence. R. at 524-635.

- Gaines' discharge report from the Horsham Clinic on September 26, 2008 noted a history of substance abuse. R. at 702.

- Dr. Cohen testified Gaines' substance abuse was material to his disability determination during the contested period, R. at 39-40, but diagnosed Gaines with bipolar disorder after November 1, 2007, R. at 37-39. He claimed Gaines, after November 2007, would likely decompensate, get mood instabilization, increased psychotic symptoms, or increased paranoid thoughts by working a low-contacts and low-stress job, but could not determine whether these symptoms were drug-induced before November 1, 2007. R. at 39. He testified "[b]ecause the substances were causing the mood instabilization [during the contested period] and causing psychotic symptoms . . . I feel that they were a material factor in his problems." R. at 40. As a result, he called Gaines' condition during the contested period "substance induced mood disorder," R. at 40, and concluded Gaines was not bipolar during the contested period, R. at 37-41, 48-49. He did not explain what limitations Gaines had during the contested period.

- Dr. Gurman testified there were no jobs available nationally or regionally for a person of Gaines' mental capacity who could not complete simple tasks on a sustained basis. R. at 96.

- At the hearing, Gaines testified he: suffers from depression; has trouble sleeping because his mind races and he hears voices; is not often in a good mood; cannot acknowledge a beautiful day; cries when he is alone at night; feels "suicidal" and afraid to be without his

11

medications; feels angry at people; and hears auditory hallucinations. R. at 71-75. Gaines explained his depression was caused by his unhappy childhood, R. at 77-78, but maintained his medications mitigate his depression symptoms, R. at 76.

He described his expensive cocaine addiction and admitted he was dependent on alcohol for a long time, which he attributed to depression, paranoia, and his difficult upbringing. R. at 79-81. Gaines testified he stopped drinking when he got to New Start Clinic in April 2008, and that he was clean seven months before that, with the exception of one relapse for a week before he entered New Start Clinic. R. at 79-80. Gaines explained New Start Clinic provided his food, did most of his chores, and set his schedule. R. at 64. Gaines stated that until just before the hearing in September 2008 he was unable to cook for himself, make his own bed, clean his home, go shopping alone, or take out the trash. R. at 64-67. It was not until his stay at New Start Clinic when he started doing some household chores and participating in outings the clinic hosted. R. at 72. He started to do some household chores, brush his teeth, and bathe himself around June 2008. R. at 66. When asked if he felt better in the eleven months since he had been sober, he answered "not much." R. at 82.

DISCUSSION

I.   <u>Legal Standard</u>

I must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); <u>Smith v. Comm'r of Soc. Sec.</u>, 631 F.3d 632, 633 (3d Cir. 2010); <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005). The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); <u>Smith</u>, 631 F.3d at

633; Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009); Rutherford, 399 F.3d at

552. "Substantial evidence is 'more than a mere scintilla.'" Diaz, 577 F.3d at 503 (quoting

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)); see also Smith, 631 F.3d at 633. It is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938));

Smith, 631 F.3d at 633; Diaz, 577 F.3d at 503.

I may not weigh the evidence or substitute my own conclusion for that of the ALJ. Burns,

312 F.3d at 118. I must defer to the ALJ's evaluation of evidence, assessment of the credibility

of witnesses, and reconciliation of conflicting expert opinions. Diaz, 577 F.3d at 506. If the

ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even

if I would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38

(3d Cir. 2001). At the same time, however, I must remain mindful that "leniency [should] be

shown in establishing claimant's disability." Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.

2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's applications of legal principles."

Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing Krysztoforski v. Chater, 55

F.3d 857, 858 (3d Cir. 1995)). Thus, I can overturn an ALJ's decision based on an incorrect

legal standard even if I find it was supported by substantial evidence. Id. (citing Friedberg v.

Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if he is unable to engage in "any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. §§ 404.1505, 416.905; Smith, 631 F.3d at 633; Diaz, 577 F.3d at

503. The claimant satisfies his burden by showing an inability to return to his past relevant work.

Rutherford, 399 F.3d at 551. Once this showing is made, the burden shifts to the Commissioner

to show the claimant, given his age, education, and work experience, has the ability to perform

specific jobs existing in the economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see

Smith, 631 F.3d at 633; Rutherford, 399 F.3d at 551.

II.    Gaines' Claims

        Gaines contends the ALJ erred in concluding Gaines did not meet listing 12.04 during the

contested period. See Plaintiff's Brief at 5-14. In articulating this claim, Gaines claims "in

reaching a finding that substance abuse was material prior to November 1, 2007, the ALJ

extensively quotes the regulatory standard (R. at 16), but fails to follow it." Id. at 7. However,

Gaines does not explain how the ALJ failed to follow the standard.[18]  Rather, Gaines conflates

this alleged error with an attack on the ALJ's reliance on Dr. Cohen, and immediately recites

how the ALJ misconstrued Dr. Cohen's testimony. Id. at 7-14; Plaintiff's Reply. In light of the

ALJ's two-part opinion analyzing Gaines' mental impairments, both with and without the

presence of material substance abuse, I find the ALJ properly applied the regulatory standard.[19]

---

[18]Gaines urges this court to follow Emergency Teletype 96-94, "an internal guideline
generated by the Social Security Administration's Office of Disability and sent to all hearing
offices on August 30, 1996, in response to questions concerning § 423(d)(2)(C)." McGill v.
Comm'r of Soc. Sec., 288 F. App'x 50, 52 (3d Cir. 2008). This Emergency Teletype, however,
is "neither binding nor entitled to deference." Id. (citing Parra v. Astrue, 481 F.3d 742, 749-50
(9th Cir. 2007)). Further, other than providing guidance from the Emergency Teletype, Gaines
does not explain how the ALJ failed to follow it. Plaintiff's Brief at 6.

[19]Where a claimant is disabled but suffers from drug addiction or alcoholism, the ALJ
must assess whether the claimant would be disabled absent drug or alcohol use. See 20 C.F.R.
§§ 404.1535(a), (b)(1), 416.935(a), (b)(1). It is clear the ALJ properly applied the standard

14

Accordingly, I will focus on whether the ALJ properly relied on Dr. Cohen's testimony in making his materiality determination and whether sufficient evidence supports the ALJ's conclusion.

In determining whether drug and alcohol abuse is material to the ALJ's finding of disability, expert psychiatric opinion evidence is not required. McGill, 288 F. App'x at 53. However, in determining whether a claimant's substance abuse materially contributed to his disability "an ALJ's disability determination . . . must be supported by at least some medical evidence." Sklenar, 195 F. Supp. 2d at 700-01; see Smith, 631 F.3d at 633. Although it is the claimant's burden to prove immateriality, the ALJ must identify some medical evidence that supports substance abuse as a material factor justifying the denial of benefits. McGill, 288 F. App'x at 52 (plaintiff bears the burden of proving immateriality); Sklenar, 195 F. Supp. 2d at 700-01 (medical and non-medical evidence cited by the ALJ did not support a finding substance abuse was material); Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003) ("If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow.").

The ALJ cited to Dr. Cohen's testimony to support his initial determination that substance abuse was a contributing factor material to his disability determination, and then separately analyzed Gaines' limitations during the contested period. R. at 16. He cited Dr. Cohen's

---

procedure for making this determination. The ALJ separately analyzed the evidence to determine whether Gaines' mental impairments would have met listing 12.04 during the contested period. R. at 16-19. The only remaining question is whether there is sufficient evidence to support his conclusion.

testimony that "during the period of time at issue, [Gaines] has had bipolar disorder and substance abuse." R. at 16. This is incorrect. Dr. Cohen testified his review of the record supports "substance-induced mood disorder" for the contested period and that substance abuse was material during this period, but that Gaines suffered from bipolar disorder starting in November 2007. R. at 37-40. Gaines argues, "[t]his discrepancy is significant, because Dr. Cohen's opinion that there was no non-substance disorder for the earlier period meant that Dr. Cohen never provided any testimony, as is required by the regulations, regarding what limitations [Gaines] was experiencing with and without substances, for the [contested period]." Plaintiff's Brief at 8; Plaintiff's Reply at 2. As Gaines notes, Dr. Cohen's testimony is ambiguous and he failed to answer precise questions posed by the ALJ to clarify how Dr. Cohen determined November 2007 as the dispositive date for awarding benefits. Plaintiff's Brief at 9-12; R. at 40-42, 48-49. In addition, it is unclear how Dr. Cohen concludes Gaines suffered only a substance-induced mood disorder, and was not also bipolar, before November 2007.

Although the ALJ misinterpreted Dr. Cohen's testimony, and Dr. Cohen did not provide testimony on the "B" and "C" criteria of listing 12.04, the ALJ also discussed medical and non-medical evidence purportedly supporting his conclusion. R. at 16-19. Gaines further challenges the ALJ's reliance on this additional evidence. Plaintiff's Brief at 12.

Gaines asserts, and I agree, that the ALJ rested his decision on medical evidence that does not sufficiently address whether Gaines would have remained disabled in the absence of substance abuse, and on an interpretation of Gaines' testimony that is not supported by the record. See Sklenar, 195 F. Supp. 2d at 701-05 (records that do no sufficiently address whether claimant would remain disabled in the absence of substance abuse do not provide sufficient

16

support for an ALJ's opinion); see <u>Diaz</u>, 577 F.3d at 505 (ALJ may not reject medical evidence for no reason or the wrong reason); <u>Smith v. Califano</u>, 637 F.2d 968, 972 (3d Cir. 1981) (ALJ may not make speculative inferences from medical evidence).

When combined with the discrepancy regarding Dr. Cohen's testimony, the absence of medical and non-medical evidence fails to constitute substantial evidence to support the ALJ's conclusion.

In concluding that Gaines' substance abuse precluded an award of benefits during the contested period, the ALJ supported his conclusion with the following:

First, the ALJ cited three hospitalizations showing Gaines' condition improved in the absence of substance abuse. The ALJ went on to determine Gaines did not satisfy the "B" and "C" criteria under listing 12.04 based, in part, on these hospital visits. R. at 17-18. Specifically, the ALJ noted:

> From December, 2006, to November, 2007, the claimant underwent three psychiatric hospital admissions. In each instance, he was engaging in heavy substance abuse. In each instance, his mental functioning capacity greatly improved by the time of discharge. When he left Temple University Hospital in January, 2007, for example, he had none of the symptoms that he reported upon admission.

<u>Id.</u> (citations omitted).

This cursory review of these three hospitalizations does not accurately reflect these hospital records. The only relevant hospital records from the contested period reflecting Gaines' condition are the Hahnemann Hospital records from April and July 2007. These records give dual diagnoses of some form of depression and alcohol and cocaine dependence. R. at 334-87. Although the records noted Gaines' depression improved during his stay, his alcohol dependence

17

remained, and no doctors attributed his improvements to abstaining from drugs and alcohol. Id. For example, during his stay at Hahnemann Hospital in April 2007, doctors diagnosed Gaines with depression and alcohol dependence and assigned him a GAF score of 30. R. at 347, 356. Gaines' diagnoses upon discharge remained the same. R. at 335. Gaines' July visit to Hahnemann Hospital revealed the same diagnoses, depression and alcohol dependence, with positive test results for cocaine. R. at 378-87. Substance-induced mood disorder was also ruled out on both visits. R. at 347, 385. This, of course, contradicts Dr. Cohen's conclusion. Compare R. at 37-40.

Likewise, records from the other two hospital visits cited by the ALJ fail to establish, either explicitly or implicitly, Gaines would not have remained disabled in the absence of substance abuse. R. at 199-232, 233-85. Moreover, other doctors have diagnosed Gaines with some form of depression and substance addiction, but have not addressed whether Gaines would have remained disabled in the absence of substance abuse. R. at 301-08, 317-20.

The medical records do not constitute substantial evidence because they do not establish the doctors considered what Gaines' impairments would be if he stopped engaging in substance abuse. Sklenar, 195 F. Supp. 2d at 701-05.

Second, the ALJ cited Gaines' testimony in determining whether he had the degree of limitations required under listing 12.04 during the contested period. However, Gaines' testimony does not establish he would not have been disabled if he had not engaged in substance abuse during the contested period.

For example, Gaines testified he stopped drinking when he got to New Start Clinic in April 2008, and that he was clean seven months before that, with the exception of one relapse.

18

R. at 79-80.  Gaines stated that until just before the hearing in September 2008 he was unable to cook for himself, make his own bed, clean his home, go shopping alone, or take out the trash.  R. at 64-67.  It was not until three months before his first administrative hearing in September 2008 when Gaines said he could independently do some household chores, brush his teeth, and wash himself.  R. at 66, 72.  At the time of the hearing, he had recently been in a rehabilitation center where someone cooked for him, did most of his household chores, and set his schedule.  R. at 64.  When asked if he felt better in the eleven months since he had been sober, he answered "not much."  R. at 82.

The ALJ combined Gaines' testimony regarding his degrees of limitation during the uncontested period with Gaines' testimony regarding what was able to do at the time of the hearing, with the help of a rehabilitation center, to conclude Gaines had moderate restrictions during the contested period in the absence of substance abuse.  It is unclear from the testimony, however, whether Gaines would remain disabled in the absence of substance abuse during the contested period.  His testimony does not, therefore, provide support for the ALJ's decision.

Although I may not reweigh the evidence or substitute my own determinations for those of the ALJ, Burns, 312 F.3d at 118, I cannot accept the ALJ's conclusions if not supported by substantial evidence, Smith, 631 F.3d at 633.[20]

Accordingly, I make the following:

---

[20]Gaines does not seek an immediate award of benefits upon remand.  Rather, Gaines asks "this Court to reverse the decision of the Commissioner and order a remand for a proper determination of the evidence."  Plaintiff's Brief at 14.  The "ultimate burden of proving continued disability" rests with Gaines.  Sklenar, 195 F. Supp. 2d at 706.

# RECOMMENDATION

AND NOW, this 7th day of September, 2011, it is respectfully recommended that Gaines'

request for reversal be GRANTED, the decision of the Commissioner is VACATED and

REVERSED, and this matter is REMANDED to the Commissioner for further review consistent

with this Report and Recommendation.  The Commissioner may file objections to this Report

and Recommendation within 14 days after being served with a copy thereof.  See Fed. R. Civ. P.

72.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva

v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).


BY THE COURT:

TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE


20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HENSON GAINES,<br>Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br>Defendant | :<br>:<br>:<br>: | No. 10-5098 |

### ORDER

BERLE M. SCHILLER, J.

AND NOW, this            day of                    , 2011, upon consideration of

Plaintiff's request for review, Defendant's response, and Plaintiff's reply, and after careful

review of the Report and Recommendation of United States Magistrate Judge Timothy R. Rice,

IT IS ORDERED that:

1.    The Report and Recommendation is APPROVED and ADOPTED.

2.    The Plaintiff's request for reversal is GRANTED.

3.    The matter is remanded to the Commissioner for further review consistent

      with the Report and Recommendation.

BY THE COURT:

_____

BERLE M. SCHILLER, J.